Good morning, Your Honors. Kathleen Soy representing the appellant, Blue Cross and Blue Shield of Kansas, and I'd like to reserve four minutes for rebuttal. Your Honors, this is a case that has come to absurd consequences. It began on a faulty foundation with a flawed complaint that sued on the wrong contract. And then after a series of erroneous decisions... We have so many contracts. There are a number of contracts. Have you diagrammed all those contracts? I have spent a lot of time putting lines on papers, understanding the contracts here. But the District Court made a series of erroneous decisions and misapplied California law. And so now this case has landed before you, needing to be straightened out. There are two errors that are before you today. First, the District Court erred in deciding a breach of written contract claim could proceed on a contract between Scripps and Blue Cross of California that Blue Cross and Blue Shield of Kansas never signed. That contract isn't alleged to have been received, all of the benefits from Blue Cross and Blue Shield of Kansas. It is not alleged that Blue Cross and Blue Shield of Kansas took on all the obligations of that. I take it that you don't dispute, counsel, that Blue Cross and Blue Shield was a member of the Blue Card National Program, right? You're correct. There's a Blue Card Program. So under that program, the whole purpose of that program is so that if a member travels outside of the service area, it would then get services, which is what happened here. The patient had to go to the emergency room for complications from surgery. And Blue Cross Blue Shields then got the benefit of discounted rates under the terms of the local contract and because Blue Cross Blue Shields was a participant in the Blue Card National Program. So I have a hard time understanding what Blue Cross Blue Shields is complaining about, given that that is the arrangement from the get-go. So explain to me where I've erred in that preliminary analysis. You did a good job laying out how the Blue Card Program works. But what it doesn't do is make Blue Cross and Blue Shield of Kansas, which is a completely separate company from Blue Cross of California, it does not make it a party to a provider contract between Scripps and Blue Cross of California. All that Blue Cross and Blue Shield of Kansas did and all that's alleged, if you look at the complaint that they did, is that they accessed the discounted rate one term. Nobody is saying that Blue Cross Blue Shields of Kansas was a signatory to the contract. I think the point is that Blue Cross Blue Shields of Kansas took advantage of the discounted rate and availed itself through this Blue Card National Program of the negotiated amounts under the Scripps Blue Cross of California contract. So that's how the contract became applicable to Blue Cross Blue Shields. As I understand it, that's Scripps' theory of the case. That's their theory of the case. But here's where it goes wrong in terms of the law. We put before the district court the argument that a breach of written contract claim under the Blue Cross of California and Scripps contract could not proceed and was not effective against Blue Cross and Blue Shield of Kansas. Again, completely separate companies, never signed to the agreement. You've got that right. The theory, there were three theories that were put forward in the complaint. They alleged that under 1589 that the contract could apply to Blue Cross and Blue Shield of Kansas. They alleged an agency theory and an estoppel theory. Those were never sustained with any factual allegations in the complaint. And the decision by the district court focused on 1589. And 1589 does not work here for the reasons that are set forth in the recorded picture case. The case of this court where you said very clearly, and I want to read you a quote from that case. Let me ask you a question. Yes, Your Honor. The Kansas people, they came in and wanted to dismiss the matter. That's correct. And the alternative is not dismiss, have it go to arbitration. Right. So it went to arbitration. Right. Okay. And then the arbitrator made a decision. And made a decision, basically a legal decision. And so you're bound by it. Here's how arbitration works. Well, Your Honor, we think that. Ann, Ann, Ann, let me just ask you this. Sure. So here's this lady. She goes down there. And she has this surgery that's down in Tijuana. And they have good doctors in there. Don't think they don't. Yeah. They've got very good doctors down there. And so something went wrong. And there was an emergency. So the ambulance takes her to Scripps. Scripps takes her to the emergency room. They correct the problem. Right. And then she. Well, Your Honor. Then she needs to go on intensive care. Now, what should Blue Scripps have done? Say, okay, we're through with you. Take her out. Take her down to Skid Row, you know. We want to get rid of her. What are they supposed to do? Your Honor, Scripps did receive the patient in its emergency room. But to make clear one thing on the factual record is the patient arrives at their emergency room. They do what is customarily done. They perform an evaluation. And if you look at the record, they declare her to be stable after they do the evaluation. And then they transfer her to a med surgery floor for some continuing treatment of the complications. And so if what the record reflects is that what Blue Cross and Blue Shield of Kansas ultimately said is they have to evaluate coverage under their policy with this patient. That's the contract that's really at issue here. And so what they ultimately said to Scripps is our policy covers emergency services. We will pay for the services that were provided in the emergency room during that first day. And they have agreed to pay that. But they did not have coverage under their policy with the patient for anything that was considered management of obesity or anything relative to management of obesity. And so their coverage position under their policy was that these services that were performed after she left the room were services that were relative to the medical management of obesity. And those are specifically excluded under their policy. So what should Scripps have done with her? Scripps, my understanding is, has a duty under the law to care for the patient once she has arrived. But that doesn't set up a duty for the insurance company to pay. I think what you're talking about now, the issue that was to be resolved before an arbitrator, the question of what it covered. But what you were talking about before is whether you have any obligation at all, including the emergency room. But those are two separate issues. And the second issue, it seems to me, is clearly an arbitrable matter. If you have to go to arbitration, then the question of what the result should be, does the contract cover only emergency services, or does it cover all services, that's a matter for the arbitrator. You may think the contract is clear and that the arbitrator made an error of law, but that's life in the arbitration system. Your first issue is whether there was any obligation at all, even to pay for the emergency services. So why don't you go back to that issue you were about to read, I think, from the California case. Yes, Your Honor. Thank you for taking me back to that, because I think that really is the critical point where this goes off the rails. In the recorded picture company case, what this court said is, we decline to adopt the rule proposed by producers that a company must comply with a contract to which it is not a party, if it has accepted even a portion of the benefits of that contract. Such a rule would lead to absurd consequences. And that's why I started with that note. That's what's happened here. All that Blue Cross Blue Shield of Kansas has done is access, again, alleged by the plaintiffs, one term of the Blue Cross of California contract, the discounted rates term. They are not a signatory to that contract. They did not take on all of the obligations in that contract. They did not accept all of the benefits from that contract. And so where this went off the rails is, the district court, instead of focusing on the issue of this Blue Card national program that she handed. Well, Blue Card is a program that is run by a completely different party that is not before the court. You see, we have a very complicated medical delivery system in this country. We do. For a lot of reasons that end up to the detriment of patients. But so here she is. She's a Blue Card member. And she's at Scripps. And then Scripps, then your client says, oh, we want to dismiss this. We move to dismiss. But if we don't get that, we'll take arbitration. And you take arbitration. And then even if the arbitrator makes a serious error on the question of the flaw, you're still plowed by it. Well, Your Honor, I think that's the way it works. Why are we here? Well, I think we're here for two very clear reasons. The district court sent nothing to do with the Kansas policy, which is the contract that determines coverage for these services. It sent the Blue Cross of California agreement that's between Scripps and a completely different company. It has nothing to do with Blue Cross and Blue Shield of Kansas. That's the question that the district court said could proceed, the breach of written contract claim. Not the implied contract claim. Not anything else. No declaration about coverage. It took you a long time to diagram all this. Sorry. So you expect the doctors to do that, too? Well, I mean, we expect for everyone to follow the contracts and the agreements that are laid down in contracts and then what the law is. And the law is very clear here in California under recorded picture that a non-signatory who has not taken on all of the benefits or all of the obligations of the contract cannot be bound by it and cannot be liable under it. So our first error is the district court should not have ruled that the breach of written contract claim could proceed. When they did rule that, and I want to get quickly to the arbitration issue, really the wrong question got sent to arbitration. It's did Kansas breach the Blue Cross and Blue Shield of California contract with Scripps. Our position always was that's not even possible because they're not related at all to that contract. They were not a signatory. They could not be bound by it. And then two problems occur in the arbitration. First, the arbitrator didn't decide that question. The only question, and everyone is in complete agreement about this, the only question that got sent to arbitration is did Kansas breach the contract between Blue Cross of California and Scripps. The judge who was the arbitrator did not answer that question. He formed his own question. He dispensed his own brand of industrial justice, his own sense of economic justice, which both the Supreme Court and this court has said is not proper, and he wrote his own question and said did Kansas breach either a written or implied contract between the parties, between Scripps and Kansas, not the contract that was even in front of him. And the law is crystal clear that an arbitrator can only deal with the contract that is in front of him, and the only contract he had in front of him was the California and Scripps contract. So he shaped his own question, decided, you know, much along the lines of the general sense of this is, oh, wow, it should be something that we can help resolve for Scripps here, but the law does not allow that to happen. So he ruled on the wrong question. Do you want to stay for a few seconds? I do. Okay. I think I have 41 seconds. All right. We'll be generous and give you two minutes. Oh, okay. Do you all like me to stop now? Yes. Okay, good. Thank you. All right. Good morning, Your Honors. It's a pleasure to be representing Scripps here today, and I'm honored to be before the Ninth Circuit. This case is about a nonprofit hospital that saved a patient's life and has not been paid. The health plan was required to pay Scripps at the rate in the Blue Cross of California contract because the care given to the member was for covered emergency services and Blue Shield of Kansas accepted all the benefits of the Blue Cross of California contract, including the highly discounted rates, including the ability to market on a nationwide basis, including the processing by the local Blue Cross of California company, including a right to pursue arbitration. But it doesn't want to accept the burdens. Blue Cross Blue Shield of Kansas cannot pick and choose which benefits or burdens it wants to accept. Both the lower court and the arbitrator got it right. Now, the benefit it accepted was the privilege of paying less than the full rate for something it said it had no obligation to pay at all. It does have an obligation to pay, though, and it agreed that it had an obligation to pay, and we even heard counsel today saying that it had an obligation to pay for the emergency services because the patient was a member of Blue Cross Blue Shield of Kansas. How does this blue card thing cut across? And so how the blue card program works is that Blue Cross Blue Shield of Kansas has access to allow to market to its members on a nationwide basis. Their members can receive care in other states, and Blue Cross Blue Shield of Kansas gets the benefit of paying a lower rate, and that's how they access the contract. And Blue Cross Blue Shield of Kansas has paid Scripps the emergency care services under the discounted rate that's set by the Scripps Blue Cross of California contract? They should pay, and they've agreed to pay. If you look into the record, if this court looks at the record where they have agreed to pay pursuant to the rates in the Blue Cross of California contract in the 2009 letter, they've actually acknowledged in multiple places that they are required to pay if the services are covered under the Blue Cross of California rate. If the services are covered by what? Under the Blue Cross Blue Shield policy. When you said Blue Cross Blue Shield policy, what does that mean? Is that a California policy or a Kansas policy? So the way that this works is Blue Cross Blue Shield of Kansas is the insurance company who the insured was a member of. The insured gets the ability to go, Kansas gets the ability to market to all these members that they can receive services in an out-of-state location. It's not, the policy is not a contract that they're alleging that Scripps should have sued under. The policy is the, I want to call it policy, where the insured, it provides for exclusions, it provides for what's covered, and in this case, emergency services were covered for this patient. And they acknowledge here in multiple places that the emergency services should be paid per the Blue Cross of California discounted rate. So you say you have a policy with Kansas, and that covers only emergency services. Well, Your Honor, it covers multiple things, but just limiting the factual circumstances in this case and what was arbitrated, the issue that was determined at the arbitration was whether or not Blue Cross Blue Shield of Kansas breached the Blue Cross of California contract by not paying pursuant to that contract. And that was decided by the arbitrator, that Blue Cross of Kansas breached that express contract as an other payor, they're listed as an other payor in the Blue Cross of California contract. Now, you have a contract, the individual has a contract with Blue Cross of Kansas. Is that right? They're insured under. Under Blue Cross of Kansas. Now, is it your position that the Blue Cross of Kansas contract somehow incorporates the California contract if you're injured in California? Yes, Your Honor. The Blue Cross of California contract does incorporate the Blue Cross of Kansas. Does the Kansas contract incorporate the California contract if you're injured in California? Your Honor, the Kansas contract is not a contract. It's the policy in which they insured is a part of. And what the contract is that the insurance. All right. Let's say the policy. Does the Kansas policy incorporate the California insurance company's benefits if you're injured in California? Yes, of course, Your Honor. Yes. So that's the dispute whether it. If you sue under the Kansas policy, you're saying that the Kansas policy incorporates the California benefit system if you're injured in California? Yes, Your Honor. Kansas cannot say that they're going to cover all these patients and let them go access all these rates if it doesn't incorporate those obligations. Your answer to Judge Reinhart's question confuses me because I thought the theory was that the Scripps Blue Cross of California contract came into play because of the Kansas company's participation in the Blue Card National Program and not because in your response to Judge Reinhart's question, the Kansas policy actually incorporated services rendered in California. So I'm thrown off by your response to Judge Reinhart's question because now your theory appears to be different. Well, Your Honor, that's not the issue in this case, and that's not the issue that was disputed as to whether the Kansas policy incorporates, by reference, the Blue Cross of California contract. The issue that was decided is that Blue Cross of Kansas breached the Blue Cross of California contract because it was to provide payment as an other payor in the Blue Cross of California contract. How does other payor tie in with the Blue Cross? The Blue Card program offers the discounted rates to all of the participants in the Blue Card program, and Blue Cross of Kansas accesses all those different rates through the Blue Card program and benefits greatly through these discounted rates. Okay. So, Your Honors, we have this federal policy favoring arbitration agreements. So am I correct, then, in my understanding, that your theory is that this insurer was insured by the Kansas company, the Kansas company participates in the National Blue Card program through which it can say to all of its members, hey, go wherever you want because we've got these relationships all over the place and we can access, essentially, contracts in other places such as California. So the insurer does, she goes to California, she needs medical care, she gets medical care, and then the Blue Cross Blue Shields of Kansas then access the Scripps BCC contract in order to avail itself of the discounted rate. That's your reliance on Section 1589, if memory serves, and that's how your theory as to how they become liable. Did I understand that correctly? Exactly, Your Honor. Let's assume Kansas is a generous state like California and provides decent benefits to people who go to hospitals. Suppose the Kansas policy would say we'll cover 100% of your injuries, and then you went to Mississippi where they may not be as generous, and Mississippi has a policy of providing only 50%. Which would you be entitled to under the Kansas policy, only 50% or the Kansas rate? Well, the rate would be determined by the local contract, so you would have to look at the local contract. So you would get the rates that are paid to people in Mississippi rather than what you would have under your Kansas policy. That's correct. If you were injured in Kansas. That's correct, Your Honor. So what we have here is we have a non-signatory who's stopped from refusing to comply with the arbitration clause. Let me ask you one more question. Your argument is here that they accepted the benefits by saying they would pay the emergency services under the lower rate. Suppose there'd been no communication at all, and this had all happened, and nobody had talked to the Kansas people and said, we're going to give you the lower rate. If nobody had talked to them and they just said, well, we're not going to pay, then would they still be obligated to pay? Well, in this case, I would say yes, because there's multiple other, there's at least six references where Blue Cross Blue Shield of Kansas has acknowledged that they're required to pay, even as a non-signatory. That just makes it even more clear, their acknowledgment that they owe for emergency services, that they can breach the Blue Cross of California contract. So even without a statute in California, you would still prevail on other theories? Yes, Your Honor. There were three theories, as counsel referenced, and the arbitrator had discretion to rule on any one of those three theories in awarding scripts for breach of the Blue Cross of California contract. And, Your Honors, I ask that you, to refer you to the Sutter, the recent Sutter-Oxford v. Sutter Supreme Court case that permits vacating only when the arbitrator strays from its task of interpreting the contract and not when he performs a task poorly. There has to be manifest disregard. Well, that's the next issue, but still on the first issue, what is your answer to counsel's reliance on the case, which I've forgotten the name at the moment. Recorded picture, Your Honor. Yes. That is definitely factually distinguishable. For that case, the court found that there was no acceptance of the benefits of the contract. And in here, there clearly was acceptance of the benefits of the contract. And so we can't look at recorded picture. It's entirely distinguishable in the facts, and we need to look more towards Harris or NorCal where there was acceptance of the benefits and a non-signatory can be compelled to arbitration. So this blue card program, the national program, is that in the record? Yes, Your Honor. The complaint alleges the facts to support. No, no, the program itself. It's a copy of the program in the record, whatever the program is. I mean, we seem to have some national system that Blue Cross Blue Shield has, and I would assume that there would be something that describes that program and what its effect is in the record. Is that the case? Is there a copy of some constitution, bylaws, program, something that tells us what the program is? Well, Your Honor, I'm not sure if you refer to the record before the arbitrator or the record before the court. And definitely before the arbitrator, that was all established, and the arbitrator had that to look at when determining whether Kansas was bound by the Blue Cross of California contract. And the arbitrator had the discretion to do that, to rule on both whether they could be bound by the contract, and, in fact, they were bound by the contract and the interest. And so there's no – Kansas has not satisfied its burden of showing manifest disregard or a completely irrational decision and cannot satisfy its burden. And, therefore, I ask that Your Honors. Where is that contract? Is it in the record, the contract that described this blue card program? I mean, is it in the court record? Your Honor, the blue card program is not in the court record because the court, it's my understanding that the motion to dismiss did not – there was no copy of that in the motion to dismiss submitted by counsel. However, again, in the arbitrator's record, the arbitrator was the one who had the authority to rule on this, and that was submitted there. Do you discuss this in your briefs? Yes, Your Honor. The blue card program, it has been discussed in the briefs. It has been briefed. And that the arbitrator had a copy of it. I did not reference the fact in the briefs, I don't believe, because the arbitrator had the discretion to rule upon what evidence was presented to him. I mean, so we don't know what was before the arbitrator, I suppose. I mean, you say this agreement was before the arbitrator, so I hadn't thought about that before. But, Your Honor, the ruling by the arbitrator – I know that, but we like to know what's really going on, you know. It doesn't hurt. I understood, Your Honor, but the arbitrator doesn't have to provide a reason to award. Well, he doesn't have to do anything, you know, I suppose, but it's nice to know. And the form of the award is also immaterial. Yeah, yeah. Yeah, but we like to live in the real world sometimes. Okay. So, Your Honors, the only thing that – You're over. What? You're over. Yeah, you're over. Thank you, Your Honors. Yeah. Okay. Just briefly, Your Honors, to try to clear this up, there are really only two contracts that are – May I ask, was it before the arbitrator? There is no blue card agreement. It is not before this court. It was not before the district court. It was not before the arbitrator. The only two contracts that are here in the record are the Blue Cross of California contract – Not before us, but – Before any tribunal in this case. Well, okay, tribunal covers a lot of ground. But was it before the arbitrator? No, Your Honor. In the arbitration, did they have that? No, Your Honor. There is no blue card program contract, and it was not ever put in the record or put before the arbitrator or the district court. The contract – there are really two contracts – The one referred from the opposing counsel is not correct. It is not correct. There are two contracts at issue here. The one that got sent to arbitration is the Blue Cross of California contract with Scripps. The only one term in that that comes into play here at all is – Was it before the arbitrator? Yes, Your Honor. So you know everything. Yes, Your Honor. It was there throughout every proceeding. You did tell Scripps that you would pay the emergency services. Absolutely. There is no dispute about that. What was the reason for that? The policy between Kansas, Blue Cross of Kansas and the patient, says that emergency services are covered and we agreed to pay those. The policy says that services for or relative to the medical management of obesity, and these were complications that came from the gastric bypass surgery taking place a couple of days before, are not covered under the Kansas policy. Yes, but, you know, the person has that operation, and then they're in another – they leave that country, they come back to America and San Diego, and there's a crisis. And they get rushed to an emergency hospital, and the hospital takes care of them. Now, so your point is that as soon as that condition got stabilized, huh, so that they're at that end of the crisis. Yes, Your Honor. That's correct. And the coverage is determined by the policy. You can never have more coverage no matter what the rate is. So here's the doctors. They operated on her. They got her kind of stabilized. And then what are they supposed to do? Kick her out of the hospital? Absolutely not. They continue to perform treatment. Hospitals perform treatment all the time that's not covered by insurance. They do all kinds of treatment that's not covered by insurance, and they can – there are recourses to go back against the patient. Kansas gets a free ride, huh? No, Your Honor. Kansas has a contract that says what it's supposed to pay for, what's covered under the policy. You agree that under the Kansas contract you pay for emergency services. Yes, Your Honor. But Scripps told you that you would get a cut rate because of some kind of policy. Right. And you took the benefit of that. What was the reason for giving you a cut rate? That's the Blue Cross of California agreement says, with Scripps, says that when Scripps serves people either who are members of Blue Cross of California or who are members of other plans, they'll give them these discounted rates. And that's not just Blue Cross other payers. Sometimes they take their network of hospitals and doctors and they provide it to all kinds of other companies as well. It's anyone that they've agreed to extend that to can use that. Again, one term, just the discounted rate term. That's all that comes into play here. You want to avail yourself of the benefit of the discounted rate, which is around 50 percent from the actual cost, but yet not cover the remaining services post-ER care? Not pay for – That's how you can buy your cake and eat it too. Not really, no. It's not paying for a service that is specifically excluded under the policy. That's really what this is about is does the insurance policy have meaning in the law? Yes, it does. It's a contract. And again, I'd refer you back to recorded picture, and we don't agree that that case can be distinguished. In that case, the sub-distributor of the home video rights had one portion of the big contract that they accessed, and the court said that is not enough to make them obligated for everything under the contract between the producers and the distributor of all the other movie rights. They had a very limited piece of it, and that's exactly what we have here. Blue Cross of Kansas gets one very limited piece. It can use a discounted rate, but everything else takes place under their policy. And to respond to a question that you asked earlier, Your Honor, the Blue Cross of Kansas contract does not incorporate the Blue Cross of California contract or vice versa. They do not incorporate each other at all. And if you look at the ‑‑ both of those documents are in the record, and it's very clear in the record that they are not incorporated. So the final thing that I ‑‑ Incorporate may be a term that is illegal, but the practical effect, if ‑‑ and this may depend on recorded pictures, but under the California statute, if you accept the benefits, suppose instead of one provision on the emergency, you've accepted ten provisions. Then the statute says when you take the benefits, you assume the obligations of that contract. That's correct. You're saying that you just didn't accept enough benefits. We only accepted one narrow term. And that under California law that this court has set out, that is not enough. Under recorded pictures, you said. Under recorded picture, which is the case that is very close to this situation. Well, that's really, it seems, coming down to as a principle issue. They have other theories. But the question of how much benefit you have to accept, whether it's the same in the motion picture industry as with a health care contract, those are the things that are up for resolution. Your Honor, you just touched on one other thing I wanted to clarify that just came up. The district court, there were two other theories that were put forward, one based on agency and the other based on equitable estoppel. The district court never addressed those theories at all. It hung its hat completely on Section 1589. And the arbitrator did not address those theories at all. And I wanted to make sure that we were clear on that, that this completely went on Section 1589. Even though they alleged those theories, the court did not reach them. Thank you. Go ahead. Thank you very much. Thanks very much. Thank you. All right. This matter is submitted.
judges: Pregerson, Reinhardt, Nguyen